## Public Defence Association et al. v. City of Pittsburgh et al.

*Equity — Salaries of city employees — Not to exceed union scale — Ordinance—Statutory requirements—Power of council.*

Where the act of assembly requires that all city officers and employees shall receive a fixed salary for their services, it is not within the power of council to fix compensation of certain city employees at a rate not to exceed the current union rate, because said rate would be subject to change by a body in whose deliberations the council would have no part, and any ordinance fixing compensation in such a way would be invalid.

Injunction. C. P. Allegheny Co., April T., 1922, No. 2200, in Equity.

*A. E. Anderson*, for plaintiffs.

*Richard W. Martin*, City Solicitor, for defendants.

FORD, J., Feb. 19, 1923.—This bill in equity was filed by a taxpayer of the City of Pittsburgh to restrain the proper officers of the municipality from acting under an ordinance passed by council, notwithstanding the Mayor's

objections, fixing the number of officers and employees of all departments of the city, and from approving warrants drawn in pursuance with said ordiance, and from paying warrants so drawn from the treasury of the city.

From the pleadings and the evidence we find the following

### Findings of fact.

1. Plaintiff, the Public Defence Association, is a corporation of the first class, incorporated by the Court of Common Pleas in pursuance with the laws of the Commonwealth, is a taxpayer of, and has its domicile in, the City of Pittsburgh.

2. Defendant, the City of Pittsburgh, is a municipal corporation of the Commonwealth. Daniel Winters, Charles Anderson, Wallace Borland, William Y. English, Robert Garland, John S. Herron, James Malone, Peter J. McArdle and William H. Robertson constitute and form "The Council" of the city. William A. Magee is Mayor, John H. Henderson, Controller, and Lawrence R. Goshorn is Treasurer, and constitute the executive officers, with power to make effective lawful legislation passed by the council.

3. On Feb. 6, 1922, the council passed an ordinance, entitled "An ordinance amending section 8, line 8, Mayor's Office," etc., of an ordinance entitled "An ordinance fixing the number of officers and employees of all departments of the City of Pittsburgh and the rate of compensation thereof," and within the time limitation set by law the ordinance was submitted to the Mayor for his approval or disapproval. A copy of the ordinance is attached to the bill of complaint and is marked Exhibit "A."

4. On Feb. 14, 1922, the Mayor returned the Ordinance of Feb. 6, 1922, without his approval and stated his reasons therefor. A copy of the communication disapproving the ordinance is annexed to the bill of complaint and is marked Exhibit "B."

5. At a meeting of council the message of the Mayor returning the Ordinance of Feb. 6, 1922, was read, and, after consideration, the ordinance was passed by a two-thirds vote, notwithstanding the Mayor's objection, and the ordinance, as thus passed, was thereafter duly recorded in the Ordinance Book of the City of Pittsburgh.

6. The ordinance does not definitely fix the amount of wage or salary to be paid to the engineer employed in the municipal garage, in the repair shop and the engineers in other departments of the City of Pittsburgh, but fixes the same in manner as follows:

"Mayor's Office, municipal garage and repair shop, line 8, engineer, not to exceed 'C. U. W.' "

"C. U. W." is defined as follows:

"Wherever 'C. U. W.' appears in the foregoing ordinance, the same shall be understood to mean the current rate of union wages paid to others doing similar work or service outside of a city employee."

The current rate of union wages was not, at the adoption of the ordinance, fixed so as to continue without change during the ensuing year, but was subject to change by action of a body independent of, and acting without consultation with, council, so that during the year the rate might be altered to a sum exceeding or below the wage paid at the passage of the ordinance.

7. The Ordinance of Feb. 6, 1922, amends an ordinance "fixing the number of officers and employees of all departments of the City of Pittsburgh and the rate of compensation thereof," which became a law Dec. 31, 1921. Since the adoption of the amending ordinance, compensation to employees has been paid in pursuance with the original ordinance, and was not the rate of compensation fixed by the amendment.

3 D. & C.

Public Defence Association et al. *v.* City of Pittsburgh et al.

### Conclusions of law.

1. The acts of assembly provide that council shall fix the rate of compensation to be paid to employees, and that "all city officers and employees shall receive a fixed salary for their services."

2. The amending ordinance became a law Dec. 31, 1921, by which the salaries of engineers and other employees of the city were fixed at a rate not to exceed "C. U. W.," was not a valid exercise by council of its legislative power and was not binding upon the officers of the City of Pittsburgh.

3. The costs to be paid by the defendants.

### Discussion.

It is conceded that it is the duty of council to fix the rate of compensation to be paid to empolyees, and that "all city officers and employees shall receive a fixed salary for their services." The only question involved in this proceeding is as to whether or not council complied with the law in fixing the rate of compensation not to exceed "C. U. W."

In effect, council delegated its duty to fix the salaries of employees to an independent body.

At the adoption of the resolution, admittedly there was current and paid a wage recognized as union wages. Instead of adopting this amount and fixing it as the wage or salary to be paid employees, the amount was left uncertain and subject to change by action of a body in whose deliberations council had no part. Clearly, fixing the rate of compensation not to exceed "C. U. W." was not a compliance with the acts of assembly.

It is suggested, however, that compensation to employees was not paid at the rate fixed by the amendment adopted Feb. 6, 1922. In addition, we are informed that the ordinance for the year 1923 fixed a sum certain.

In view of the action taken and being taken, and the ending of the fiscal year, we are satisfied that the purposes of the bill are served by determining the question of law involved, and there is no present need for issuing a restraining order.          From Edwin L. Mattern, Pittsburgh, Pa.